Filed 7/16/26  Stringer v. City of Los Angeles CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| NATALIE STRINGER<br><br>Plaintiff and Appellant,<br><br>v.<br><br>CITY OF LOS ANGELES et al.,<br><br>Defendants and Respondents. | B337152<br><br>(Los Angeles County<br>Super. Ct. No.<br>22STCP03042) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mitchell L. Beckloff, Judge.  Affirmed.

Law Offices of Gregory G. Yacoubian and Gregory G. Yacoubian, for Plaintiff and Appellant.

Hydee Feldstein Soto, City Attorney, Denise C. Mills, Chief Deputy City Attorney, Kathleen A. Kenealy, Chief Assistant City Attorney, Shaun Dabby Jacobs, Supervising Assistant City Attorney, and Merete Rietveld, Deputy City Attorney, for Defendants and Respondents.

# INTRODUCTION

Natalie Stringer, a former police officer with the Los Angeles Police Department, appeals from the judgment after the trial court granted in part and denied in part her petition for writ of administrative mandate (Code Civ. Proc., § 1094.5).[1] Stringer sought an order directing the City of Los Angeles and the Chief of Police to set aside the termination of her employment with the Department, reinstate her, and award her backpay.

In 2021 the Los Angeles City Council passed Ordinance No. 187134 that required all City employees to get vaccinated against COVID-19 unless they qualified for a medical or religious exemption. The City issued a directive prescribing the COVID-19 testing policy for nonexempt unvaccinated employees (including those awaiting a decision on their exemption request) and the consequences for failing to comply. City department heads issued a notice to each unvaccinated employee describing the testing protocols, which included requirements that each employee pay for the testing and sign the notice acknowledging the employee's obligations. Stringer chose not to get vaccinated, applied for a religious exemption, and refused to sign the notice acknowledging her responsibilities to submit to COVID-19 testing while the Department was considering her request for an exemption. The Chief of Police relieved her of duty and initiated the process to discharge her from the Department. The Board of Rights ultimately sustained the Department's decision to terminate Stringer's employment.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

Stringer filed a petition for writ of administrative mandate, claiming that the City's requirement she pay for the COVID-19 tests and complete the testing on her personal time violated Labor Code section 2802 and Ordinance No. 187134; that the Board terminated her employment in violation of her due process rights under *Skelly v. Personnel Board* (1975) 15 Cal.3d 194 (*Skelly*)[2]; and that the penalty the Board imposed was disproportionate to her misconduct. The trial court granted the writ in part, ruling the Department violated *Skelly*, and ordered the City to award Stringer backpay from the date the Department suspended her pay to the date the Chief of Police issued the final order terminating her employment (a period of approximately four months).

Stringer argues the Department's notice requiring her to pay for COVID-19 tests and complete the testing on her personal time as a condition of employment violated Ordinance No. 187134. She also argues that any misconduct on her part did not justify the Board's decision to terminate her employment and that the trial court improperly limited the remedy for the Department's *Skelly* violation to an award of backpay. Finally, she contends her loss of employment without a jury trial on the misconduct charge violated the Seventh Amendment of the United States Constitution. We affirm.

---

[2]    In *Skelly, supra*, 15 Cal.3d 194 the Supreme Court held that a permanent civil service employee subject to discipline "be accorded certain procedural rights before the discipline becomes effective," including "notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." (*Id.* at p. 215.)

# FACTUAL AND PROCEDURAL BACKGROUND

A. *The City Council Enacts a COVID-19 Vaccination Policy and Issues a Directive for Unvaccinated Employees*

Effective August 25, 2021, Ordinance No. 187134, codified as Los Angeles Administrative Code section 4.701, subdivision (a), provided: "To protect the City's workforce and the public that it serves, all employees must be fully vaccinated for COVID-19, or request an exemption, and report their vaccination status in accordance with the City's Workplace Safety Standards, no later than October 19, 2021." The ordinance stated that the vaccination and reporting requirements were "conditions of City employment," unless the employee was "approved for an exemption from the COVID-19 vaccination requirement as a reasonable accommodation for a medical condition or restriction or sincerely held religious beliefs." (L.A. Admin. Code, § 4.701, subd. (b).) Under the ordinance employees who qualified for a medical or religious exemption were "subject to weekly COVID-19 tests," with the tests to be provided "at no cost during their work hours." (L.A. Admin. Code, § 4.702, subd. (b).)

City officials negotiated with the City's labor organizations on the "impacts" of the City's vaccination policy, including "the consequences for non-compliance with the Mandatory Reporting and Vaccination conditions of employment," but reached "a stalemate in negotiations." In light of the "catastrophic public health emergency," the City Council decided it did not have time to exhaust the procedure for resolving the impasse in the collective bargaining process. On October 26, 2021 the City Council directed the mayor to implement the terms of a "Last,

4

Best, and Final Offer Over Outcomes for Non-Reporting and Non-Compliance" (Last Offer). The Last Offer outlined the procedures for the head of each City department to follow to take "corrective action for violations of Ordinance No. 187134." The department head had to issue each employee who failed to comply with the vaccine mandate (did not vaccinate and did not request an exemption) a "Notice of Mandatory COVID-19 Vaccination Policy Requirements" (Notice), which would instruct the employee how to submit proof of full compliance and, in the interim (until the employee received two doses of the vaccine), how to submit to COVID-19 testing twice per week, on the employee's personal time, at a cost of $260 per pay period. The Last Offer specified the employee had to test with "the City or a vendor of the City's choosing."

The Last Offer provided that employees who filed "exemption paperwork" and were "awaiting the result of the City's evaluation process" would be "subject to the same terms applicable to employees who were not fully vaccinated and who have received a Notice," including the testing protocol for employees who did not request an exemption. The Last Offer stated: "Each employee who is required to test while awaiting the determination by the City of their exemption request shall be required to sign a Notice and to comply with its terms as outlined above and herein. Failure to sign and fulfill the conditions of the Notice shall constitute failure to meet a condition of employment and shall result in appropriate and immediate corrective action."

5

B.    *Stringer Requests an Exemption, Informs Her Commanding Officer She Decided Not To Get Vaccinated, and Refuses To Sign the Notice*

Stringer submitted a request for a religious exemption. Before the Department ruled on her request Stringer informed her commanding officer that she had decided not to receive the COVID-19 vaccine or establish an account with the City's vendor to complete the required testing. On November 3, 2021 Stringer's commanding officer issued Stringer the Notice that informed Stringer of her obligation to submit to COVID-19 testing and the consequences for failing to comply.

The Notice described the City's vaccination policy and listed the testing obligations of employees who were awaiting approval of exemption requests, including the requirement to test twice a week on their time and at their cost through the City or a vendor of its choosing. After listing the testing requirements the Notice stated: "I understand that if I do not follow all the terms and conditions above, including showing proof of full vaccination within the time frame above, I will immediately be placed off duty without pay pending pre-separation due process procedures (Skelly) and I will be served with a written notice of proposed separation from City employment for failing to meet a condition of employment." The last page of the Notice provided a space for Stringer to sign underneath a paragraph stating she agreed "to abide by all of the terms and conditions" of the Notice. Stringer's commanding officer reviewed the contents of the Notice with Stringer, including the consequences for not complying with the Notice. Stringer did not sign the Notice.

6

C.    *The Department Charges Stringer with Misconduct and Recommends Termination, and the Board of Rights Sustains the Recommended Penalty*

On December 6, 2021 the Chief of Police signed a complaint charging Stringer with failing "to comply with the requirements of the Notice of Mandatory COVID-19 Vaccination Policy Requirements, a condition of employment"; temporarily relieved her of duty; and directed her to report to the Board of Rights with the proposed penalty of termination of her employment with the Department.  After a hearing the Board concluded:  "Officer Stringer is unvaccinated and has refused to be tested and thereby charged by the City's vendor. . . .  [S]he testified she refused testing because she believed it was unfair that vaccinated officers were not required to be tested.  She felt discriminated against as an officer seeking a religious exemption. . . .  [T]he City's policy of mandatory testing by the City's vendor, . . . as well as the policy that an officer may have payment for testing deducted from their paycheck, is not before this Board."  The Board acknowledged the testimony of Stringer's commanding officer that Stringer was "an exemplary employee," but the Board found Stringer guilty of the violations.

The Board acknowledged Stringer's commendations for "leadership, hard work, teamwork, integrity, and . . . thorough investigations at the scene" and recognized all of her performance evaluations "either met or sometimes exceeded standards." Nevertheless, the Board, "based on the totality of the circumstances," sustained the proposed penalty of removal from the Department.

D.    *Stringer Files a Petition for Writ of Mandate*

Stringer filed a petition for writ of mandate under sections 1085 and 1094.5 seeking an order directing the City, among other things, to set aside the decision to terminate her employment.  She also requested an award of backpay.  The City demurred to Stringer's cause of action under section 1085 and moved to strike portions of the petition.  The court sustained the demurrer, denied the motion to strike, and set a briefing schedule for the petition.

Stringer filed her operative second petition for writ of mandate under section 1094.5, Labor Code sections 2802, 2804, and 1102.5, and Los Angeles City Charter section 1070.[3] Stringer argued that the requirement she pay for COVID-19

---

[3]    Labor Code section 2802, subdivision (a), provides: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful."  (See *Krug v. Board of Trustees of California State University* (2025) 110 Cal.App.5th 234, 241.)  Labor Code section 2804 invalidates any "contract or agreement, express or implied, made by any employee to waive the benefits" of Labor Code section 2802.  (See *In re Acknowledgment Cases* (2015) 239 Cal.App.4th 1498, 1507.)  Stringer did not specify which subdivision of Labor Code section 1102.5 she claimed applied to her or the City violated, but the statute generally concerns an employee's right to disclose information to a government or law enforcement agency. Los Angeles City Charter section 1070 concerns an employee's rights when the Department pursues disciplinary action against the employee.

8

testing violated Labor Code section 2802 and Ordinance No. 187134, that the Department relieved her of duty and suspended her pay in violation of her rights under *Skelly*, *supra*, 15 Cal.3d 218, and that the penalty the Board imposed "was clearly excessive." At the hearing counsel for Stringer argued the City's requirement an unvaccinated employee had to pay for COVID-19 testing and complete the testing "on the employee's own time" "specifically contradict[ed] the provision" of the "Los Angeles Administrative Code, which codified Ordinance 187134." That provision, according to counsel for Stringer, stated "the City would pay for the testing."[4]

The trial court ruled the Board terminated Stringer's employment in violation of her due process rights under *Skelly*, granted the petition on that ground, and directed the Board to award her backpay from January 17, 2022 to May 25, 2022. The court denied Stringer's other claims, including that the Notice violated Ordinance No. 187134 and that the penalty was disproportionate to the misconduct. The court stated the ordinance had "no provision for COVID-19 testing—employees must be vaccinated or exempt from the vaccine on medical or religious grounds." Stringer timely appealed.

---

[4] Counsel for Stringer also argued the Notice violated Labor Code section 2802. Stringer does not make this argument on appeal.

9

# DISCUSSION

## A.     *The Notice Did Not Violate Ordinance No. 187134*

### 1.     *Applicable Law and Standard of Review*

"Administrative mandamus is available to obtain judicial review of a public agency 'decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer.'" (*Bedard v. City of Los Angeles* (2024) 106 Cal.App.5th 442, 453 (*Bedard*); see § 1094.5, subd. (a); *Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 810 (*Fukuda*); *Harrington v. Housing Authority of Riverside County* (2026) 118 Cal. App. 5th 1086, 1098.) "In a proceeding for administrative mandate, the judicial inquiry extends to whether the public agency 'has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion.'" (*Bedard*, at p. 453; see § 1094.5, subd. (b); *Fukuda*, at p. 810; *Harrington*, at p. 1098.)

"The trial court reviews the administrative decision de novo but affords the administrative findings 'a strong presumption of correctness.'" (*Bedard*, *supra*, 106 Cal.App.5th at p. 454; see *Fukuda, supra*, 20 Cal.4th at p. 817.) "'[T]he party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence.'" (*Bedard*, at p. 454; see *Fukuda*, at p. 817.)

"'"When an appeal is taken from the trial court's determination, it is given the same effect as any other judgment after trial rendered by the court:  the only question is whether

10

the *trial court's* (not the administrative agency's) findings are supported by substantial evidence.  [Citation.]  Conflicts in the evidence must be resolved in favor of the judgment and where two or more inferences can be reasonably drawn from the facts, the reviewing court must accept the inferences deduced by the trial court.'. . .  [¶]  "'Evidence is substantial if any reasonable trier of fact could have considered it reasonable, credible and of solid value.'  [Citation.]  Additionally, a reviewing court 'may look to the findings in [the administrative agency's] decision for guidance in determining whether the trial court's judgment is supported by substantial evidence.'"'  [Citations.]  'However, we are not bound by any legal interpretations made by the administrative agency or the trial court; rather, we make an independent review of any questions of law.'"  (*Bedard*, *supra*, 106 Cal.App.5th at p. 454; see *Fukuda*, *supra*, 20 Cal.4th at p. 824; *Lozano v. City of Los Angeles* (2022) 73 Cal.App.5th 711, 723.)

"'Courts interpret municipal ordinances in the same manner and pursuant to the same rules applicable to the interpretation of statutes.'"  (*Harrington v. City of Davis* (2017) 16 Cal.App.5th 420, 434; accord, *Tran v. County of Los Angeles* (2022) 74 Cal.App.5th 154, 162; *Lateef v. City of Madera* (2020) 45 Cal.App.5th 245, 253.)  We review de novo "'rulings on questions of law such as interpretation of city charters and municipal codes.'"  (*Sieg v. Fogt* (2020) 55 Cal.App.5th 77, 88.)

### 2.    *The Trial Court Correctly Ruled the Notice Did Not Violate the Ordinance*

The trial court did not err in denying Stringer's claim the Notice violated Ordinance No. 187134.  Section 4.702,

11

subdivision (a), of the ordinance stated, "Employees who qualify for the medical or religious exemptions may be subject to weekly testing." Section 4.702, subdivision (b), of the ordinance provided: "Employees with medical or religious exemptions and who are required to regularly report to a City worksite shall be subject to weekly COVID-19 tests. Testing will be provided to the employees at no cost during their work hours following a process and timeline determined by the City." The ordinance's provision regarding "no cost" COVID-19 testing referred only to employees who qualified for an exemption. (L.A. Admin. Code, § 4.702, subds. (a), (b).) (See *Lateef v. City of Madera*, *supra*, 45 Cal.App.5th at p. 253 [""It is axiomatic that in the interpretation of a statute where the language is clear, its plain meaning should be followed."""].) The provision did not include employees such as Stringer who were waiting for the Department to approve their request for an exemption. We cannot read into the provision a matter the City Council did not address. (See *ibid.* ["we are not empowered to insert language into a statute, as '[d]oing so would violate the cardinal rule of statutory construction that courts must not add provisions to statutes"].)

The statement of the City Council's intent in enacting the ordinance confirms the ordinance limited the free testing service to employees who had already qualified for an exemption: "The City's goal is to have a vaccinated workforce. As such, employees will not have the option to 'opt out' of getting vaccinated and become subject to weekly testing. Only those with a medical or religious exemption and who are required to regularly report to a work location are eligible for weekly testing." (L.A. Admin. Code, § 4.702.) Requiring Stringer to pay for COVID-19 testing and to

12

complete those tests on personal time did not violate Ordinance No. 187134.

### B. *The Court Did Not Err in Ruling the Board Did Not Abuse Its Discretion in Discharging Stringer*

We "'review de novo whether the agency's imposition of a particular penalty on the petitioner constituted an abuse of discretion by the agency. [Citations.] But we will not disturb the agency's choice of penalty absent "'an arbitrary, capricious or patently abusive exercise of discretion'" by the administrative agency.'" (*Bedard*, *supra*, 106 Cal.App.5th at p. 454; see *County of Los Angeles v. Civil Service Com. of County of Los Angeles* (2019) 40 Cal.App.5th 871, 877 ["The court may not substitute its own judgment for that of the [administrative agency], [or] 'disturb the agency's choice of penalty absent "'an arbitrary, capricious or patently abusive exercise of discretion'" by the administrative agency' [citation], but must uphold the penalty if there is any reasonable basis to sustain it."].) In considering whether an abuse of discretion "occurred in the context of public employee discipline, . . . the overriding consideration in these cases is the extent to which the employee's conduct resulted in, or if repeated is likely to result in, '[harm] to the public service.' [Citations.] Other relevant factors include the circumstances surrounding the misconduct and the likelihood of its recurrence." (*Skelly*, *supra*, 15 Cal.3d at p. 218; accord, *County of Los Angeles*, at p. 877.) "'Of these three factors, harm to the public service is the "overriding consideration."'" (*Bedard*, at p. 458.)

The trial court correctly ruled the Board did not abuse its discretion in discharging Stringer because she failed to meet a condition of her employment. For unvaccinated employees who

13

applied for an exemption, the City's Last Offer made semiweekly COVID-19 testing and testing on the employee's personal time a condition of employment. Stringer does not dispute she failed to comply with this condition of employment.

The court properly concluded that, "[c]onsidering the public health emergency caused by the COVID-19 pandemic" and "the impact on the City's employees and operations," it was not unreasonable for the Board "to select a penalty of discharge." Stringer's failure to comply with the requirements of the Notice endangered the public health. In March 2020 the mayor declared a local emergency in response to the COVID-19 virus, which, as the City Council stated 18 months later, "continues to change and evolve." The City Council found that vaccination was "the most effective way to prevent the spread of COVID-19 and to limit . . . hospitalizations and deaths" and that the conditions for employment in the City's Last Offer addressed "unvaccinated first responders who regularly interact[ed] with vulnerable members of the public while performing their duties." Stringer's refusal to get vaccinated and to sign the Notice affirming her intent to comply with the testing requirements placed the public and her coworkers at risk. The Board reasonably decided to discharge her for violating a condition of her employment designed to protect public health. (See *Bedard*, *supra*, 106 Cal.App.5th at pp. 448, 458 [where the plaintiff failed to submit proof she had been vaccinated against COVID-19, did not apply for an exemption, and refused to sign the Notice, the Board "did not abuse its discretion in finding that termination was the appropriate remedy"].)

Stringer argues there was no evidence that her refusal to sign the Notice "caused harm to the public service" or that her

14

"minor" misconduct "was likely to recur," given the City later "revoked the 'rule' for which [she] was fired."[5] Stringer is incorrect. As discussed, the City Council determined vaccination would reduce hospitalizations and transmission of the disease, and Stringer's refusal to receive the vaccine and her refusal to pay for the mandated COVID-19 testing jeopardized public health. She informed her commanding officer she would not comply with unambiguous conditions of employment. Therefore, her misconduct (and the threat to public health) recurred every day she went to work and refused to comply with the requirements of the Notice. (See *Bedard, supra*, 106 Cal.App.5th at pp. 456, 458 [because the employee informed her commanding officer "she would not be vaccinated for personal reasons," the Board "could reasonably infer that at the point in time it was making its decision, the public harm would be recurring"].) Stringer refused to comply with the City's policy "to address the

---

[5] Stringer asserts that in February 2023 the City Council "passed a Resolution to discontinue 'COVID-19 surveillance testing requirements' for all current and future employees." The City Council, however, did not pass this resolution until after the Board made its decision in this case. The administrative record does not include a copy of the resolution, and the trial court declined to take judicial notice of it; therefore, we do not consider it. (See *Bedard, supra*, 106 Cal.App.5th at p. 458, fn. 11 [events occurring after the Board's decision, including the City Council passing a resolution ending the vaccination requirement, had "no bearing on the Board's decision"]; see also *Anton's Services Inc. v. Hagen* (2025) 116 Cal.App.5th 90, 101 ["Evidence outside the administrative record is generally not admissible in proceedings filed under Code of Civil Procedure 1094.5."].)

15

imminent threat to public health and safety and workplace safety posed by allowing unvaccinated City employees to remain in the workplace and to continue to interact with the public and other City employees." The trial court did not err in ruling the Board did not abuse its discretion in terminating Stringer for this serious misconduct.[6]

C.    *Stringer Was Not Entitled to a Jury Trial*

Finally, citing *Securities and Exchange Commission v. Jarkesy* (2024) 603 U.S. 109, a case the United States Supreme Court decided after the trial court ruled on her petition, Stringer argues her "loss of employment, loss of income, loss of future pension income, through administrative proceedings violated the Seventh Amendment's guarantee of a jury trial." In *Jarkesy* the Securities and Exchange Commission (SEC) sought civil penalties and other remedies against an investment manager and a related entity for securities fraud. (*Id.* at p. 118.) The SEC decided to adjudicate the matter before an administrative law judge, rather than in federal court where the factfinder would

---

[6]    Because the Board had ample justification for discharging Stringer, the trial court properly limited the award for the *Skelly* violation to backpay. (See *Barber v. State Personnel Board* (1976) 18 Cal.3d 395, 402 [the remedy for a violation under *Skelly* "is to award back pay for the period of wrongful discipline"]; *Bedard, supra,* 106 Cal.App.5th at p. 460 ["*Barber* established that the only remedy for the violation of an employee's due process is backpay when her discharge is justified."]; *Williams v. City of L.A.* (1990) 220 Cal.App.3d 1212, 1217 ["the proper remedy for a *Skelly* violation is an award of backpay for the period described in *Barber*, rather than reinstatement"].)

16

have been a jury, and the administrative law judge imposed a sizeable civil penalty for the wrongdoing. (*Id.* at pp. 117, 119.) The United States Supreme Court held the "SEC's antifraud provisions replicate common law fraud, and it is well established that common law claims must be heard by a jury." (*Id.* at p. 120.) The Supreme Court held that the Seventh Amendment of the United States Constitution "extends to a particular statutory claim if the claim is 'legal in nature'" and that a civil penalty is "'a type of remedy at common law that could only be enforced in courts of law.'" (*Id.* at pp. 122, 123.)

*Jarkesy* does not apply here, primarily because the Seventh Amendment's guarantee of a right to a jury trial in suits at common law does not apply in state courts. (See *Nationwide Biweekly Administration, Inc. v. Superior Court* (2020) 9 Cal.5th 279, 330 ["The federal civil jury trial provision of the Seventh Amendment applies only to civil trials in *federal court*; federal decisions explicitly hold that the civil jury trial provision of the Seventh Amendment does not apply to *state court proceedings*."]; *Crouchman v. Superior Court* (1988) 45 Cal.3d 1167, 1173, fn. 5 [same]; *Orange County Water Dist. v. Alcoa Global Fasteners, Inc.* (2017) 12 Cal.App.5th 252, 356 [same].) In addition, Stringer's suggestion a public employer's disciplinary action is somehow like an SEC proceeding fails; a public employer terminating an employee for misconduct is nothing like a federal agency seeking civil penalties for securities fraud. Stringer asserts the Los Angeles City Charter "gives the Police Chief a 'private right' to take disciplinary action, which, under the SEC decision requires a jury trial." Stringer, however, provides no legal authority or reasoned argument to support this assertion. (See *Estrada v. Public Employees' Retirement System*

17

(2023) 95 Cal.App.5th 870, 889; *Public Employment Relations Bd. v. Bellflower Unified School Dist.* (2018) 29 Cal.App.5th 927, 939.)

## DISPOSITION

The judgment granting in part Stringer's petition and directing the City to award Stringer backpay from January 17, 2022 to May 25, 2022 is affirmed. The City is to recover its costs on appeal.

SEGAL, J.

We concur:

MARTINEZ, P. J.

FEUER, J.